# Overseers of the Poor of Harmony Township *versus* County of Forest.

1. Under the provisions of the Act of April 22d 1863, proceedings were had *ex parte* and an order made for the removal and support of a lunatic pauper and an adjudication filed as to his settlement, but no legal notice was given to the township where his settlement was decided to be, that such order and adjudication had been made and filed. The county afterwards brought suit against said township to recover the amount expended for said pauper's support. *Held*, that the Act of 1863 should not be so construed as to preclude the district from defending on the ground that the insane person did not reside therein. *Held further*, that it was competent and relevant for the county to show that he had a legal settlement in said township.

2. Where an indigent insane person has no legal settlement in the Commonwealth, then his place of residence should be held to be his place of settlement; and if the evidence fails to show a settlement, but a residence be proved in a poor district, said district is liable for expenses incurred in said pauper's behalf, which liability can only be thrown off when such district discovers and adduces proof of his place of legal settlement.

3. Where a person lives in a house with its lessee, and by agreement with the lessee, contributes a proportion of the rent to the amount of twenty dollars per annum, he obtains a settlement in the township where such house is located.

4. It was not error to admit a deposition taken by the clerk of the county commissioners, in a suit by the county.

October 22d 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas of *Forest county:* Of October and November Term 1879, No. 331.

Assumpsit by the county of Forest against the Overseers of the Poor of Harmony township.

Defendants pleaded non assumpserunt, payment with leave, &c.

At the trial, before Wetmore, P. J., it appeared that at the regular term of the Court of Quarter Sessions of Forest county, held in September 1875, the case of Michael Calinan, an alleged lunatic pauper, was brought before the court, and there was an order of removal made to the West Pennsylvania Hospital on the 27th, and in the order of removal it was adjudicated that the legal settlement of said insane person was in the township of Harmony, in Forest county.

This adjudication was entirely ex parte and without notice to the proper authorities of Harmony township, and it was so admitted at the trial. This order of removal was without prejudice to the rights of said township in any question that might arise as to the legal settlement of said Calinan.

The expenses of maintenance of this lunatic pauper were regularly paid by Forest county. Suit was brought by the county against the defendants as overseers of the poor of Harmony township, to recover from the township the amount so paid.

[Overseers of Harmony v. County of Forest.]

The order of removal and adjudication was offered in evidence by plaintiff's attorney and it was objected to by defendants as being ex parte and without notice to defendants, that they could not be affected by it, and that it was incompetent generally. The objections were overruled and the record admitted. (First assignment of error.)

During the progress of the trial the deposition of Mrs. Calinan, wife of the alleged lunatic pauper, taken before J. T. Brennan, Esq., was offered for the purpose of showing that the place of settlement of M. Calinan was in Harmony township. The admission of this deposition was objected to by defendants for the reason that the person before whom the deposition was taken was the clerk of the county commissioners, and in the employ of the plaintiff and incompetent to take the testimony, but the principal objection was that it was incompetent in this suit to try the question of settlement of a pauper as that was exclusively cognisable in the Quarter Sessions, and not a question for a jury to pass upon. The objections were overruled. (Second assignment.)

Plaintiff offered several witnesses to show that said pauper had obtained a legal settlement in Harmony township by living in said township with his daughter and son-in-law, the latter being the lessee of the premises, but the pauper contributing $20 as his portion of the rent, which sum was paid by the daughter to the landlord.

Objected to, on the grounds that the settlement offered to be proved was purely cognisable in the Court of Quarter Sessions; that it was collateral to the issue, incompetent and irrelevant.

The objections were overruled and the evidence admitted. (Third assignment.)

The defendants' first point, with the answer of the court, was as follows :—

The order of removal of the alleged lunatic pauper to the West Pennsylvania Hospital, and the adjudication as to his settlement in Harmony township, contained in the record in this case, without notice as required to the overseers of the poor of Harmony township, and adjudication of the settlement being expressly made "without prejudice" to the said Harmony township, said adjudication of settlement is not binding or conclusive upon said township, and without any force or effect in this suit, and the plaintiff cannot recover.

Ans. "Affirmed, except the following words: 'and the plaintiff cannot recover.'" (Sixth assignment.)

In the general charge, the court, inter alia, said :—

"If you find that Calinan had a residence within the construction that we have given the Act of Assembly, we say that the township is liable to the county for the legal expenses incurred by the county and paid by them to the hospital for the maintenance

of Calinan, including the amount that was necessarily expended in removing him from Tionesta to the West Pennsylvania Hospital for the Insane at Dixmont." (Thirteenth assignment.)

Verdict for plaintiff for \$686.75, and after judgment defendants took this writ, and alleged that the court erred, inter alia, as set forth in the above assignments of error.

*S. T. Neill, M. J. Heywang* and *S. D. Irwin*, for plaintiffs in error.—Brennan was the clerk of the county commissioners, and was thereby disqualified to take a deposition in a suit in which the county was concerned. The Act of April 22d 1863, Pamph. L. 539, 2 Purd. Dig. 974, pl. 34, requires notice to be given to the authorities having charge of the poor. The proceedings in the Quarter Sessions were ex parte, and no notice having been given as required by the above act, they were not admissible in evidence : McKee *v.* McKee, 2 Harris 237.

The Common Pleas has no jurisdiction to determine the question of settlement. That question can only be decided in the Quarter Sessions : Point Township *v.* Overseers of Lycoming Township, 2 Rawle 26. The evidence to establish the settlement of the pauper in Harmony township was insufficient.

*Miles W. Tate*, for defendant in error.—The record and record papers in No. 4 September Sessions 1875, were properly admitted. This court does not·review the record of commitment, and it is presumed that record is right: Lower Augusta Township *v.* Northumberland County, 1 Wright 143.

The failure of the court to give the notice required by the first section of the Act of 1863 would be no defence here, by the terms of the act itself. But we have distinct authority to the effect that the county is here subrogated to the rights of the hospital in a suit of this kind : Danville Poor District *v.* Montour, 25 P. F. Smith 37.

Notice given, does not create the liability of the district. Settlement of the pauper lunatic therein does. This being the proper forum (Lower Augusta Township *v.* Northumberland County, 1 Wright 143 ; Danville, &c., Poor District *v.* Montour, 25 P. F. Smith 37), the district could avoid the liability by showing in the civil court, " that some other district was the true place of settlement of the lunatic:" Shenango *v.* Wayne, 10 Casey 184. And this is all the law requires here. The evidence touching the legal settlement of the lunatic pauper in this case was therefore relevant, and the submission of that question to the jury was not error.

The evidence of the legal settlement of Michael Calinan in Harmony township is sufficient. He paid rent beyond the value of \$10, and dwelt in the house more than a whole year with his family : Beaver *v.* Hartly, 1 Jones 259.

[Overseers of Harmony v. County of Forest.]

Mr. Justice TRUNKEY delivered the opinion of the court, November 17th 1879.

Before a person shall be entered on the poor book of any district, an order for his relief shall be obtained from two justices of the peace of the county. Act June 13th 1836, Pamph. L. 541. Under that act no claim for necessaries furnished a pauper, however pressing his wants, can be recovered from the district, unless such order be issued prior to commencement of the action; but, in proper cases, it may be procured after the pauper has been relieved. Warrants for the removal of a pauper from the district when he becomes chargeable, to the one where he has a legal settlement, must be issued in like manner. From the orders of the justices an appeal may be taken, by an aggrieved party, to the Court of Quarter Sessions. It is contended on the part of the plaintiffs in error, that the county had no right of action, because the place of settlement of Michael Calinan had not been determined, as required by the statutes for relief of the poor; and this is the main question presented in the numerous assignments. Calinan was committed to the West Pennsylvania Hospital by the Court of Quarter Sessions of Forest county, and it was certified by said court that he had a legal settlement in Harmony township; but notice of the inquiry, or of the adjudication, was not given to the overseers of the poor of that district.

The first section of the Act of April 22d 1863, Pamph. L. 539, makes it the duty of the court to inquire and ascertain certain facts, and if the insane person be declared in indigent circumstances, to certify to the managers of said hospital the legal settlement of such insane person, if he have any, and if he have no legal settlement in this Commonwealth, then to certify the place of residence of such insane person, which place shall then be held to be his place of settlement; and the county wherein such indigent insane person had his settlement or residence shall be liable to said hospital for the expenses of the care and maintenance and removal, and in case of death, of the funeral expenses of such insane person, with remedy over against the proper poor district. Section 14 of said act declares that a certified copy of the commitment shall be evidence in any suit brought by the hospital to recover the amount due; and no defence shall be taken by any county or poor district in any suit against them to recover the amount of such expenses, on account of any defect or informality in such commitment or record thereof, nor by reason of the failure of the court making such commitment to give the notices or certificates required by the first and eleventh sections of the act. By section 12, the county where such insane person had a legal settlement or residence, or from which he was sent, is made liable to said hospital for the expenses incurred in his care, as provided by law, and "in all such cases the county so chargeable shall have remedy over against the proper township,

[Overseers of Harmony *v.* County of Forest.]

city, or poor district where, by existing laws, such township, city, or poor district is liable for the support of such insane persons, or against any relative required by law to maintain him or her; and the overseers or guardians of the poor of any such township, city, or poor district shall also have remedy over against the property of such insane person, or against any relative required by law to support or maintain him or her." Where the indigent insane person has no legal settlement in the Commonwealth, then his place of residence shall be held to be his place of settlement; and, if the evidence fails to show a settlement, but a residence be proved in a poor district, said district is liable for the expenses, which liability can only be thrown off when such district discovers and adduces proof of his place of legal settlement.

Remedy is provided for the county against the district, liable by existing laws, for the support of the insane person, in like terms as is given against his relatives who are legally liable for his support. This is by action at law: Danville Poor District *v.* Montour, 25 P. F. Smith 35. The law declares the requisites of a legal settlement, and when mere residence shall be deemed a settlement for the purpose of support, and prescribes the modes of procedure for relief of paupers. The procedure is not the same for the indigent insane, when originally commenced in courts of record, as for others, and ought not to be. Laws relating to the hospitals for the care and custody of these unfortunate persons, provide the remedy for recovering the expenses from their relatives, or the proper poor district. When the county has paid the hospital, neither reason nor anything in the statute which binds the county to pay, permits the district, liable for the expenses, to defend against an action by the county, in any other way than it could have done had it been sued by the hospital. No part of the statute requires the county to wait some procedure before two justices of the peace before bringing suit; nor any additional adjudication by the Quarter Sessions.

Previous notice to the authorities of a poor district of an inquiry respecting the settlement or residence of the insane person is not required; but notice is directed to be given to said authorities and to the county commissioners of what has been adjudicated and certified. Here the act differs from that of 1845, which relates to the Pennsylvania State Lunatic Hospital, and provides, " That the settlement or residence of any such person shall not be so certified until after due notice shall have been given to the constituted authority having charge of the poor in the district to be charged thereby." Nor does anything in the acts relating to that hospital have similar import as the 14th section of the Act of 1863: Danville Poor District *v.* Montour, *supra,* was a case to which the Act of 1845 applied.

Although the Act of 1863 makes the certificate evidence, when notice was not given, it ought not to be construed as precluding

[Overseers of Harmony *v.* County of Forest.]

the district defending on the ground that the insane person did not reside therein. The 14th section specifies the defences which shall not be made, and the ex parte adjudication as to settlement is not declared to be final against the district. For some purposes, the record of the proceedings of the Court of Quarter Sessions in the matter of the lunacy of Michael Calinan was evidence; it was not relied on to prove his settlement in Harmony township. Other proof of that was given which, if not sufficient to show a legal settlement, was to establish residence, but we think it was rightly submitted on the question of settlement.

We are of opinion that the rulings of the learned judge were within the intendment of the statute relating to the West Pennsylvania Hospital. Whether the poor district, after an adjudication and certificate, by the Court of Quarter Sessions, of the settlement or residence of an insane person, if aggrieved, can demand relief in that court, is not a point raised in this case.

It is not alleged that the magistrate, before whom the depositions were taken, acted unfairly, and the mere fact that he was clerk for the county commissioners was not fatal; the first assignment cannot be sustained. Judgment affirmed.

Justices MERCUR and GORDON dissented.

A motion was made on November 24th 1879 for a re-argument for the following reasons:

1st. That the controversy in this suit was not between the West Pennsylvania Hospital and Harmony township, the plaintiff in error, and, therefore, the 14th section of the Act of 22d April 1863, had no application to this case.

2d. The commissioners of Forest county should have first procured an adjudication, by the Court of Quarter Sessions of said county, as to the legal settlement of the pauper by rule on the township, where the settlement is supposed to be, to show cause, &c., and this can, under the authorities, be done as well after an order of removal as before.

3d. That the Act of 22d of April 1863 (the West Pennsylvania Hospital Act), is not inconsistent with the Act of 13th of June 1836 (Poor Laws), and does not repeal it, and should be construed in connection with that act, and in conformity to its provisions in determining the legal settlement of a pauper, whether sane or insane.

4th. The Act of 1845 (the Pennsylvania Lunatic Hospital Act), and that of 1863 (the West Pennsylvania Hospital Act), are in *pari materia*, and both acts, in letter and spirit, require notice to be given to poor districts before they can be charged with the expense of keeping and maintaining paupers sent to said hospital.

5th. The plaintiff in error was entitled to notice in this case of the

order of removal, and adjudication of settlement of the lunatic pauper at the time, for it could then have shown that his proper relatives were able to maintain this pauper.

6th. A jury of twelve men is not the proper tribunal to pass upon the question of the legal settlement of a pauper.

7th. Under the authority of Point Township *v.* Lycoming Township, 2 Rawle 26, and Danville *v.* Montour, 25 P. F. Smith 35, the defendant below was advised that no evidence could be heard before a jury as to the legal settlement of the pauper, and an opportunity should be given in a new trial to said township to show that the legal settlement of said pauper was not in said township.

8th. If evidence is admissible in the Common Pleas, before a jury, as to the legal settlement of a lunatic pauper, no adjudication of settlement is necessary or requisite in an order of removal to the hospital.

PER CURIAM.—And now, January 5th 1880, motion for reargument refused.